Richard T. DORMAN, et al., Plaintiffs,

v.

Richard THORNBURGH, et
al., Defendants.

Civ. A. No. 90–0614–GHR.

United States District Court,
District of Columbia.

June 14, 1990.

Michael T. Ambrosino, Asst. U.S. Atty., U.S. Attorney's Office, Washington, D.C., for defendants.

## ORDER

REVERCOMB, District Judge.

Plaintiff Richard T. Dorman is a prisoner currently incarcerated at the Federal Correctional Institution (F.C.I.) in Butner, North Carolina. Plaintiff Joannie Roberts also resides in North Carolina. The defendants include: Richard Thornburgh (United States Attorney General), the Bureau of Prisons (BOP), Michael Quinlan (BOP Director), G.L. Ingram (BOP Assistant Di-

rector), K.M. Hawk (BOP Assistant Director), J.D. Hadden (Warden F.C.I. Butner), Jim Brand (Unit Manager F.C.I. Butner), Mark Jackovich (Inmate Systems Manager F.C.I. Butner), Salley Hunt (UNICOR Quality Assurance Manager F.C.I. Butner), J.D. Clem (Retired Counselor F.C.I. Butner), Joe Falzone (Counselor F.C.I. Butner), Dave Herring (Counselor F.C.I. Butner), Mitchell Sprinkel (Case Manager F.C.I. Butner), C.B. Vann (Landscape Foreman F.C.I. Butner), and Keith Zutat (Case Manager F.C.I. Butner).

Plaintiff Richard Dorman was previously assigned to work status with Federal Prison Industries, Inc. (UNICOR) at F.C.I. Butner as authorized by 29 C.F.R. § 345.12. Richard Dorman was removed from his work assignment at F.C.I. Butner for failure to participate satisfactorily in the Inmate Financial Responsibility Program, which requires that inmates apply a portion of their prison employment earnings toward certain financial obligations, such as restitution, fines, and assessments. 28 C.F.R. § 545.11; Program Statement 5380.-1. Plaintiff Dorman contends that he did not apply any of his earnings to his court assessment because his wife, plaintiff Roberts, was disabled and unable to work and that he accordingly needed to forward his earnings to her to enable her to meet her living expenses.

■ The essential claim which this Court can distill from the plaintiffs' forty-nine page complaint is that the defendants have allegedly conspired to deprive the plaintiffs of their fifth, eight and fourteenth amendment rights in removing plaintiff Dorman from his work assignment. The plaintiffs have sued the defendants in their individual and official capacities.[1]

This matter is before the Court pursuant to the defendants' motion to dismiss or, in the alternative, to transfer and the plaintiffs' motion for leave to amend complaint.

## I. Lack of Personal Jurisdiction Over the Defendants in Their Individual Capacity

■ The plaintiffs are seeking monetary damages from the defendants in their individual capacity and accordingly this Court must be able to assert personal jurisdiction over each of them. Only four of the individually named defendants (Richard Thornburgh, Michael Quinlan, G.L. Ingram, and K.M. Hawk) work in this city and have any contact with the District of Columbia. The remaining defendants were not personally served within the District of Columbia, are not residents of the District of Columbia, and are not within the reach of the District of Columbia long-arm statute which provides, in relevant part, that the Court:

> may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> (1) transacting any business in the District of Columbia;
>
> * * * * * *
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C.Code § 13–423 (1989 Repl.). *See generally Reuber v. United States*, 750 F.2d 1039, 1049 (D.C.Cir.1984).

■ Based on the principles of agency law, under the long-arm statute this Court can exercise personal jurisdiction over out-of-state defendants who have no direct contacts with the District of Columbia if the plaintiff alleges that an overt act in furtherance of the conspiracy was committed

---

**1.** It also appears that plaintiff Dorman is challenging the conditions and duration of his confinement. For example, the plaintiff contends that the defendants have "denied him the 'industry good time' he was earning thereby illegally causing him to have a longer term of imprisonment." If plaintiff is seeking a writ of habeas corpus he must bring it in the United States District Court for the Eastern District of North Carolina which is the district having jurisdiction over his custodian.

in the District of Columbia by any member of the conspiracy and the resulting injury to the plaintiff occurred in the District of Columbia. *See Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973). As stated in *Hoffman v. Halden,* 268 F.2d 280 (9th Cir. 1959), *overruled in part on other grounds, Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962):

> If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requisite purpose and intent ... then all defendants are liable for the acts of the particular defendant under the general principles of agency on which conspiracy is based.

*Id.* at 295–96.

In the instant case the plaintiffs are unable to cite an overt act in furtherance of a conspiracy which occurred in Washington, D.C. The plaintiffs contend that the overt act in Washington, D.C. was the promulgation of Program Statement 5380.1 from which the Butner defendants' enforcement authority is derived. However, although the promulgation is certainly an act, the problem is that there are no facts to support the contention that it was done in furtherance of a conspiracy or agreement in which the Butner defendants had joined. Indeed, the plaintiffs recognize that the Butner defendants did not join in any conspiracy as much as they simply followed the regulations that were promulgated in Washington, D.C. As the plaintiffs state:

> *All* of the defendants derive their alleged authority for their illegal acts from Washington. Without the mandate of the Washington defendants the Butner defendants would have no illegal policy to enforce, would have no illegal guidelines to follow in enforcing it, and would

have no incentive to illegally overstep those guidelines in the enforcement of the said illegal act. * * * The Butner defendants do not have the authority to discontinue the illegal acts without a decision from Washington.

Accordingly, this Court rejects any efforts by the plaintiffs to characterize regulations promulgated in Washington, D.C. into overt acts in furtherance of a conspiracy which is joined by other government officials by the mere fact that they later fulfill their duties in enforcing those already-enacted regulations. As the plaintiffs' complaint makes clear, their challenge is not to any conspiracy but to a specific regulatory scheme; this Court will not allow the plaintiffs to assert the fiction of a conspiracy simply in order to establish personal jurisdiction over defendants who clearly have no contact or interest with the District of Columbia.

 Moreover, even assuming that the promulgation of the regulations in Washington, D.C. could constitute an overt act in furtherance of a conspiracy which the Butner defendants had joined by the simple fact of their subsequent enforcement of those regulations, the purported injury to the plaintiffs occurred in North Carolina. "Under the District of Columbia 'long-arm' statute, both the act and the effect, or injury, must take place in the District." *Mandelkorn v. Patrick,* 359 F.Supp. at 695; *see also Margoles v. Johns,* 333 F.Supp. 942, 944 (D.D.C.1971), *affirmed,* 483 F.2d 1212 (D.C.Cir.1973). Accordingly, the plaintiffs' complaint against the defendants in their individual capacities must be dismissed for lack of personal jurisdiction over all of the defendants.[2]

## II. *Lack of Subject Matter Jurisdiction Over Claims Against Defendants in Their Official Capacity*

The federal government, its agencies, and federal officials when sued in their

2. Indeed, even assuming that personal jurisdiction could be established over the Butner defendants who enforced the regulations promulgated in Washington, D.C. on a conspiracy theory under the long-arm statute, such an exercise would violate their due process rights. In order to subject a non-resident defendant to a binding judgment based on out-of-state service, due pro-

cess requires that the defendant have "minimum contacts" with the forum in which the action was brought of such a character "that the maintenance of the suit would not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

official capacities, are absolutely shielded from tort actions for damages unless sovereign immunity has been waived. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The only waiver conceivably applicable in the instant case is the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2679(a).

[7] In the instant case plaintiff Dorman essentially characterizes the implementation of Program Statement 5380.1 as unconstitutional on due process and equal protection (based on class) grounds. However, the Federal Tort Claims Act does not waive sovereign immunity with respect to constitutional torts; accordingly, there is no applicable waiver of sovereign immunity for plaintiffs' claims against the defendants in their official capacities. *Laswell v. Brown*, 683 F.2d 261, 267–68 (8th Cir. 1982); *Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir.1978); *Kline v. Republic of El Salvador*, 603 F.Supp. 1313, 1317 (D.D.C.1985).

■ Even assuming that the plaintiffs' complaint does allege common law torts against the defendants in their official capacity, they have sued the wrong parties. The Federal Tort Claims Act directs that the exclusive remedy for common law tort claims is an action against the United States rather than against the individuals or the particular government agencies. Since the plaintiffs elected to sue the agencies and the officials rather than the government itself, the "official capacity" aspect of their lawsuit must fail for that reason alone. *See Kline*, 603 F.Supp. at 1316–17.

■ Moreover, prior to instituting suit under the Federal Tort Claims Act, the plaintiffs must ·exhaust their administrative remedies which requires that the plaintiffs file with the agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation and (2) a sum-certain damage. 28 U.S.C. § 2675(a). This provision is jurisdictional and cannot be waived. *Hohri v. United States*, 782 F.2d 227, 245–46 (D.C.

Cir.), *reh'g denied*, 793 F.2d 304 (D.C.Cir. 1986), *rev'd on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Although plaintiff Dorman did file an administrative claim, he filed the instant suit *prior* to the expiration of the six-month period in which he had to wait for a final administrative decision. Although this period has since passed, the caselaw provides that where a suit is premature in the first instant subject matter· jurisdiction is not later cured by the passage of time. *See Plyler v. United States*, 900 F.2d 41 (4th Cir.1990) (court was without jurisdiction under section 2675(a) where the action was filed in district court before the full expiration of the six months); *see also Gregory v. Mitchell*, 634 F.2d 199 (5th Cir.1981) (fact that by time of appeal the six-month period specified in FTCA for agency disposition had expired did not confer jurisdiction where action was filed prior to. expiration of such six-month period, as jurisdiction must exist at time the complaint is filed).

Accordingly; the plaintiffs' . complaint must be dismissed for lack of subject matter jurisdiction over the causes of action against the defendants in their official capacity.

III. *Venue*

■ Even if this Court had personal jurisdiction over all of the defendants and subject matter jurisdiction, this Court would transfer this case to the United States District Court for the Eastern District of North Carolina for lack of venue in the District of Columbia. Clearly all of the defendants do not reside in the District of Columbia and accordingly venue would only be proper here if plaintiffs' claim arose in the District of Columbia. 28 U.S.C. § 1391(b). In *Lamont v. Haig*, 590 F.2d 1124 (D.C.Cir.1978), in which the court analyzed the "claim arose" language of section 1391(b), the court held that situs of events having operative significance to the case is controlling. *Id.* at 1133. The court held that

> where "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal

of the implications of those events for accessibility to witnesses and records. *Id.* at 1134.

The plaintiffs clearly concede that the operatively significant event of the conspiracy to deprive them of their civil rights occurred in Butner, North Carolina where the purported "ringleader" originated and operated the conspiracy. As the plaintiffs' complaint provides:

> Defendant Brand is the Unit Manager of Georgia Tech and Clemson Unites at F.C.I., Butner. * * * Defendant Brand has the authority, and uses such, to override all members of the "unit team", when it suits his desires, and has a "godlike" power over all prisoners and staff assigned to live in, or work in, the Georgia Tech and/or Clemson Units. *Defendant Brand was the originator of, and continuing force behind, the extortion and attempted extortion complained of against Plaintiffs*, deprived Plaintiff Roberts of her livelihood, and then in a malicious manner, continued to implement other illegal, harmful acts against both Plaintiffs. After the original conspiracy to extort, Defendant Brand continued to use his official power to further harm Plaintiffs with illegal acts. Defendant Brand coerced other Defendants to make false statements in official investigations of alleged grievances filed by Plaintiff Dorman and Roberts. *Defendant Brand is the "ringleader" of the conspiracy to extort as pertaining to the Plaintiffs in this action.* * * * Defendant Brand is located in the Eastern District of North Carolina at F.C.I., Butner. . . .

In light of the facts that the alleged injuries to the plaintiffs occurred in North Carolina and that the "ringleader" of the conspiracy acted in North Carolina, it is clear that the venue for any action that the plaintiffs may have is in North Carolina.

IV. *Leave to Amend Complaint*

■ The plaintiffs have filed a motion for leave to amend their complaint. The amended complaint does not allege any additional facts or assert any different causes of action than those contained in the original complaint. On the contrary, the plaintiffs seek to amend their complaint simply in order to remove two defendants[3] from their action and to focus their claims. This Court appreciates the effort of plaintiffs to amend their complaint to state a more plain and concise statement but since the amended complaint would not cure the jurisdictional and venue problems which require the dismissal of the original complaint, this Court will not grant leave to amend the plaintiffs' complaint.

It hereby is

ORDERED that the plaintiffs' motion for leave to amend complaint be, and the same hereby is, DENIED; and it is further

ORDERED that the defendants' motion to dismiss or, in the alternative, to transfer be, and the same hereby is, GRANTED; and it is further

ORDERED that the plaintiffs' complaint be, and the same hereby is, DISMISSED.

---

**3.** Plaintiffs contend that defendants Salley Hunt and J.D. Clem should be dismissed from the case.