**Jabari ZAKIYA, Plaintiff,**

v.

**UNITED STATES of America, et al. Defendants.**

**No. CIV.A. 02CV425 (RBW).**

United States District Court, District of Columbia.

June 10, 2003.

---

Johnny Martin Riddick, Riddick & Associates, Washington, DC, For plaintiff.

Brian J. Sonfield, U.S. Attorney's Office, Washington, DC, for defendants.

### MEMORANDUM OPINION

WALTON, District Judge.

Plaintiff Jabari Zakiya has filed this action pursuant to the Federal Torts Claim Act and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the United States and several former and current federal officials.[1] In essence, plaintiff alleges that agents of the Federal Bureau of Prisons ("BOP") violated his constitutional rights by keeping him imprisoned three years beyond his judicially imposed sentence based upon his refusal to sign an Installment Schedule Agreement for Unpaid Fines, which he purportedly was told was a condition of his release pursuant to 18 U.S.C. § 3624(e). The defendants have filed a Motion to Dismiss or, in the Alternative, Transfer [# 8]. For the reasons set forth below, the Court will grant defendants' motion in part, and will dismiss certain claims and transfer plaintiff's remaining claims to the United States District Court for the Northern District of West Virginia.

### I. Factual Background

The predicate for plaintiff's incarceration which is the subject of this lawsuit, was his failure to pay his federal taxes. As a result, he was convicted for tax eva-

sion and the willful failure to file tax returns. Compl. ¶ 12.[2] On February 18, 1994, Mr. Zakiya was sentenced to a term of imprisonment of sixteen months, which commenced on January 4, 1995, and was to conclude on May 1, 1996. *Id.* ¶ 13. In addition to his incarceration, Mr. Zakiya was assessed a fine of $25,000, a $200 special assessment fee, and ordered to serve three years on supervised release at the conclusion of his prison sentence. *Id.* ¶ 14. Mr. Zakiya surrendered himself to the Federal Correctional Institution ("FCI") located at Morgantown ("FCI Morgantown"), a minimum security prison located in West Virginia on January 4, 1995. *Id.* ¶ 15. According to his complaint, he was essentially a model prisoner, and due to "good-time credit" his sentence was "commuted by sixty-two days" making his new release date no later than February 29, 1996. *Id.* ¶ 16.

Problems regarding plaintiff's relationship with the BOP commenced on February 27, 1996, when plaintiff was summoned to the office of Terri Gosnell, Supervisor of Input–Output Processing at FCI Morgantown, in preparation for his impending release. At that time, Ms. Gosnell presented a document to Mr. Zakiya that was described as an "Installment Schedule for Unpaid Fines," which was given to him "as part of the Inmate Financial Responsibility Program" ("IFRP"). *Id.* ¶ 21. Ms. Gosnell informed Mr. Zakiya that he had to sign the installment payment form as "a condition of his release pursuant to and as

1. Specifically, plaintiff has named as defendants the United States Department of Justice; Attorney General John Ashcroft; Roscoe C. Howard, the United States Attorney for the District of Columbia; the former Director of the Federal Bureau of Prisons, Kathleen Hawk–Sawyer; the Wardens of the Federal Correctional Institution located in Morgan-

town, West Virginia, William J. Thompson and B.A. Bledsoe; and the Warden of the Federal Correctional Institution located in Petersburg, Virginia, Steven M. Dewalt.

2. References to "Compl." are to the plaintiff's amended complaint, which the Court granted plaintiff leave to file on May 6, 2003.

provided by 18 U.S.C. § 3624(e)."[3]  *Id.* ¶ 22.  Mr. Zakiya refused to sign the installment payment form stating that he "had no legal obligation" to sign the form. *Id.* ¶ 23.  Plaintiff's refusal started the events that form the nucleus of this lawsuit.[4]  The operative events culminated on May 4, 1999, when, after filing several *habeas corpus* petitions, Mr. Zakiya's immediate release was ordered by a judge of the United States District Court for the Eastern District of Virginia. *Id.* ¶ 45. Mr. Zakiya was then released on May 5, 1999, three years after his originally scheduled release date of May 1, 1996. *Id.* ¶ 46.

On March 6, 2002, Mr. Zakiya filed his complaint in this case.  He is asserting claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680 (2000); 5 U.S.C. § 301 (2000);[5] 18 U.S.C. § 3621 (2000),[6] and claims against former and current officials of the United States government in their individual capacities pursuant to *Bivens,* 403 U.S. at 388, 91 S.Ct. 1999,[7] for wrongful imprisonment (count one); negligence-loss of property (count two); personal injury (count three); retaliation (count four); deprivation of liberty-wrongful imprisonment (count five); cruel and unusual punishment (count six); and denial of his rights to substantive and procedural due process, to counsel, and to a trial by jury (count seven).[8]  He seeks $100 million dollars in total recovery.[9]

**3.**  18 U.S.C. § 3624(e), entitled "Supervision after release" provides, in part:

No prisoner shall be released on supervision unless such prisoner agrees to adhere to an installment schedule, not to exceed two years except in special circumstances, to pay for any fine imposed for the offense committed by such prisoner.

As a result of this statutory language, the BOP adopted Program Statement 5380.05, section 5.a.(5), which provides:

In accord with 18 U.S.C. Section 3624(e), any inmate who has a term of supervised release and a fine relative to the offense under which he or she was committed, must agree to adhere to an installment schedule to pay any remaining balance on this fine while under release supervision. Any inmate who refuses to comply with Section 3624(e) must remain in the custody of the Bureau of Prisons.

Defendants' Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer ("Defs.' Mem.") at 2. This policy currently appears in Program Statement 5280.07. *Id.* at 2 n. 2.

**4.**  The underlying facts concerning Mr. Zakiya's efforts to secure his release from prison can be found in *Ross v. Thompson,* 927 F.Supp. 956 (N.D.W.Va.1996), *aff'd* 105 F.3d 648, 1997 WL 11353 (4th Cir.1997), *cert. denied* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 146 (1997) and *Zakiya v. Reno,* 52 F.Supp.2d 629 (E.D.Va.1999).

**5.**  5 U.S.C. § 301 provides that "[t]he head of an Executive department ... may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property."

**6.**  18 U.S.C. § 3621 pertains to the procedures applicable to prisoners post-sentencing and includes provisions pertaining to the place of imprisonment, delivery of the order of commitment, delivery of a prisoner for court appearances, and substance abuse treatment.

**7.**  In *Bivens,* the Supreme Court "implied a cause of action for damages against federal agents who allegedly violated the Constitution." *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 473, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

**8.**  Only counts one through four assert *Bivens* and FTCA claims.  Counts five through seven are brought solely pursuant to the FTCA for defendants' actions that allegedly resulted in the deprivation of plaintiff's constitutional rights.

**9.**  In counts five through seven of his original complaint, plaintiff asserted claims pursuant to 42 U.S.C. § 1983 (2001).  He has not reasserted claims pursuant to § 1983 in his amended complaint and therefore the Court

## II. The Defendants' Motion to Dismiss

The defendants have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), (4), (5), and (6), which, if granted, would dispose of plaintiff's complaint in total.[10] The Court will address defendants' arguments separately.[11]

### A. The Court Lacks Personal Jurisdiction over Defendants William J. Thompson, B.A. *Bledsoe, and Steven M. Dewalt.*

Defendants Thompson, Bledsoe and Dewalt seek dismissal of the complaint as it pertains to them pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court does not have personal jurisdiction over them. Defendants' Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer ("Defs.' Mem.") at 10. Defendants argue, based upon the caption of plaintiff's complaint, that defendants Thompson and Bledsoe were, at all times relevant to this matter, wardens at the FCI in Morgantown, West Virginia, and that defendant Dewalt was the warden at the FCI in Petersburg, Virginia. *Id.* In the absence of any allegations that these defendants "have ever resided in the District of Columbia, or worked here at any time relevant to this case[,]" defendants argue that this Court cannot exercise personal juris-

diction over them because the District of Columbia long-arm statute would not permit the Court to do so. *Id.* In opposition, plaintiff argues that the Court may properly exercise personal jurisdiction over defendants Thompson, Bledsoe and Dewalt because they "are federal officers, and agents of the BOP, which is headquartered in the District of Columbia." Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") at 8.[12] Furthermore, plaintiff argues, "reading . . . the complaint in the light most favorable to the plaintiff[ ], suggest[s] that these individually named defendants, under authority from the BOP, engaged in tortious conduct in the District of Columbia. Clearly, [the plaintiff contends,] the BOP transacts business in the District of Columbia, and does so through its agents." *Id.* (citing D.C.Code 13–423(a)(1)–(4) (2001)).

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." *Bancoult v. McNamara,* 214 F.R.D. 5, 9 (D.D.C.2003) (citing *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990)). The plaintiff has the burden of "alleging specific acts connect-

---

concludes any claims brought pursuant to § 1983 have been abandoned.

**10.** The defendants originally filed their motion to dismiss on October 7, 2002; plaintiff filed an opposition in response to this motion on October 25, 2002, and defendants filed a reply on November 19, 2002. Thereafter, on January 1, 2003, plaintiff filed an uncontested motion to file an amended complaint, which the Court granted him leave to do on May 6, 2003. Defendants filed a supplement to their motion to dismiss on January 27, 2003, to which plaintiff filed a supplemental opposition on February 7, 2003.

**11.** Because the Court concludes that it cannot exercise personal jurisdiction over several of the defendants, and therefore concludes that transfer of this action is appropriate, it will not address defendants' arguments directed at counts one through four of plaintiff's complaint.

**12.** The pages of plaintiff's opposition were not numbered, therefore, references to the pages of plaintiff's opposition are to the pages in the sequential order in which they appeared in the opposition.

ing the defendant with the forum ..." *United States v. Philip Morris Inc.*, 116 F.Supp.2d 116, 121 (D.D.C.2000). Personal jurisdiction over non-resident defendants may only be exercised in this jurisdiction pursuant to the District of Columbia's long-arm statute. *Risley v. Hawk*, 918 F.Supp. 18, 23 (D.D.C.1996), *aff'd* 108 F.3d 1396 (D.C.Cir.1997). To determine whether this Court may exercise personal jurisdiction over the nonresident defendants, it must conduct a two part inquiry, which entails (1) "examin[ing] whether jurisdiction is applicable under the state's long-arm statute [and (2) ] ... determin[ing] whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995)). The District of Columbia long-arm statute, D.C.Code § 13–423(a) (2000), provides that personal jurisdiction may be exercised

> over a person, who acts directly or by an agent, as to a claim for relief arising from the person's-
>
> > (1) transacting any business in the District of Columbia;
> >
> > (2) contracting to supply services in the District of Columbia;
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

■ According to the allegations of plaintiff's complaint, defendants Thompson, Bledsoe and Dewalt were, "upon information and belief ... personally involved in the decision to continue Plaintiff's incarceration past his judicially imposed sentence...." Compl. ¶¶ 7–9. However, plaintiff provides no support for his statement that these defendants "under authority from the BOP, engaged in tortious conduct *in the District of Columbia.*" Pl.'s Opp'n at 8 (emphasis added). It is undisputed and confirmed by the allegations made in his complaint that plaintiff was never incarcerated in the District of Columbia. *See* Compl. ¶ 15 ("On January 4, 1995, Mr. Zakiya voluntarily surrendered and self-reported to FCI Morgantown ... a minimum security prison in West Virginia."); ¶ 41 ("Mr. Zakiya was then transferred by the BOP ... first to FCI Lewisburg, a maximum security facility in Lewisburg, Pennsylvania on or about February 19, 1998, and then, after two weeks, to FCI Petersberg [sic], in Petersburg, Virginia, on or about March 4, 1998 ..."). From these allegations of plaintiff's complaint, it is clear that any injury Mr. Zakiya sustained occurred in West Virginia, Pennsylvania and/or Petersburg, Virginia, and therefore the Court cannot conclude that any tortious injury occurred in this district. *See Meyer v. Federal Bureau of Prisons*, 929 F.Supp. 10, 13 (D.D.C. 1996) (in *Bivens* action, court declined to exercise personal jurisdiction over federal defendant residing in Missouri where plaintiff failed to "allege that he was harmed in any way in the District of Columbia by [the defendant]."); *Risley*, 918 F.Supp. at 23 (in *Bivens* action, court declined to exercise personal jurisdiction over federal prison officials where plaintiff failed to "allege that he suffered any injury in the District of Columbia."); *Marshall v. Reno*, 915

F.Supp. 426, 429 (D.D.C.1996) (in *Bivens* action, court declined to exercise personal jurisdiction over federal prison officials where "no injury [was] alleged to have been suffered in the District of Columbia ..."); *Dorman v. Thornburgh,* 740 F.Supp. 875, 878 (D.D.C. 1990) (declining to exercise personal jurisdiction over North Carolina defendants where "the purported injury to the plaintiffs occurred in North Carolina. Under the District of Columbia 'long-arm' statute, both the act and the effect, or injury, must take place in the District [of Columbia].'") (citations omitted), *aff'd* 955 F.2d 57 (D.C.Cir.1992).

Furthermore, plaintiff's position that the Virginia and West Virginia defendants "engaged in tortious conduct in the District of Columbia[ ]" because they "[a]ll are federal officers, and agents of the BOP, which is headquartered in the District of Columbia[,]" Pl.'s Opp'n at 8, must also be rejected as was a similar argument in *Dorman,* 740 F.Supp. at 875. In *Dorman,* the plaintiffs alleged that the defendants, who included the Attorney General, the BOP and BOP prison officials located in North Carolina, violated the plaintiffs' constitutional rights through the implementation of a federal regulation that required "inmates [to] apply a portion of their prison employment earnings toward certain financial obligations, such as restitution, fines, and assessments." *Id.* at 877 (citations omitted). When plaintiff Dorman refused to have some of his prison work assignment earnings applied to the payment of his court assessed fines because he claimed his disabled wife needed the money, prison officials removed him from his work assignment. *Id.* Dorman and his wife filed a lawsuit in which they argued that the prison officials' actions violated several of their constitutional rights and that the defendants had conspired to deprive the plaintiffs of these rights. *Id.* In concluding that

it did not have personal jurisdiction over the North Carolina defendants under the District of Columbia long-arm statute, a former member of this court noted that the plaintiffs had failed "to cite an overt act in furtherance of the conspiracy which occurred in Washington, D.C." and rejected plaintiffs' argument that the "overt act [committed] in Washington D.C. was the promulgation of Program Statement 538.91 from which the Butner [,North Carolina BOP] defendants' enforcement authority [was] derived." *Id.* at 878. The court stated that it was

> reject[ing] any efforts by the plaintiffs to characterize regulations promulgated in Washington, D.C. into overt acts in furtherance of a conspiracy which is joined by other government officials by the mere fact that they later fulfill their duties in enforcing those already-enacted regulations. As the plaintiffs' complaint [made] clear, their challenge [was] not to any conspiracy but to a specific regulatory scheme; this Court will not allow the plaintiffs to assert the fiction of a conspiracy simply in order to establish personal jurisdiction over the defendants who clearly have no contact or interest with the District of Columbia.

*Id.* at 878.

Although plaintiff in this case has not alleged the existence of a conspiracy, his position concerning why this Court can exercise jurisdiction over the non-District of Columbia defendants is similar to the argument made by the *Dorman* plaintiffs: namely, that the out-of-state defendants, as agents of the BOP, engaged in tortious conduct in the District of Columbia by enforcing a BOP policy that was presumably promulgated in this district. However, as held by the *Dorman* court, the mere enforcement of a regulation that was promulgated here does not suffice to confer personal jurisdiction to a court in this dis-

trict over individuals who are not located in this district and who committed no acts in this district, when the alleged injury sustained by the plaintiff also did not occur in this district either. Furthermore, the mere fact that the BOP conducts business in this district "and does so through its agents[,]" Pl.'s Opp'n at 8, does not amount to the out-of-state defendants having transacted business in the District of Columbia. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C.Cir.1993) ("Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."); *Marshall*, 915 F.Supp. at 429 (in *Bivens* action, court declined to exercise personal jurisdiction over federal prison officials, noting that the "[d]efendants ... work in Louisiana ... [and] ... New York. Because these defendants are not alleged to conduct any business or make any contracts for services in the District of Columbia ... the Court cannot exercise jurisdiction over them."). Consistent with how other courts have almost universally resolved similar jurisdictional disputes, this Court concludes that it does not have personal jurisdiction over defendants Thompson, Bledsoe or Dewalt.[13] Accordingly, the Court will not address the other arguments raised by defendants' motion pertaining to plaintiff's *Bivens* claims regarding these defendants. *See Meyer*, 929 F.Supp. at 13 (declining to address plaintiff's remaining claims against the federal defendant, stating that "[a]bsent jurisdiction, the Court need not address other possible deficiencies raised by the defendants regarding

the plaintiff's constitutional tort claims against the defendant ... in his individual capacity pursuant to *Bivens* ...").

**B. Defendants' Argument that Plaintiff Does Not Have Standing to Enjoin Enforcement *of the BOP's Policy has been Conceded.***

On the last page of his complaint, plaintiff states that he "seeks a permanent injunction against the BOP for incarceration beyond a judicially imposed release date for any failure and/or refusal to sign an IFRP installment agreement, until such time as Congress may amend, modify, or repeal 18 U.S.C. § 3624(e) and such other statutes." Compl. ¶ 144. In their motion to dismiss, the defendants argue that plaintiff lacks standing to obtain such injunctive relief because

> [t]he injunction [plaintiff] requests would do nothing to redress any injury he claims to have suffered. According to his own allegations, he is no longer incarcerated. And he does not allege that he expects to be incarcerated in a federal institution again. Consequently, plaintiff is not currently affected by 18 U.S.C. § 3624(e), and there is no indication that it will affect him in the future.

Defs.' Mot. at 23.

Plaintiff fails to address defendants' standing argument in either his originally filed opposition or in his supplemental opposition. This alone is justification for dismissal of his request for injunctive relief. *See, e.g.,* LCvR 7.1(b) (local court rule stating that failure to file an opposition to a motion "within the prescribed time" may result in the court

---

13. The Court will not dismiss these defendants, however, having determined in section III of this opinion, *supra* at 17, that this action should be transferred to the Northern District of West Virginia.

"treat[ing] the motion as conceded."); [14] *Federal Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 68 (D.C.Cir.1997) (affirming district court's grant of summary judgment where defendant failed to timely file an opposition, stating that " '[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the [local] rule." ') (citation omitted); *see also Hopkins v. Women's Div., General Bd. of Global Ministries,* 238 F.Supp.2d 174, 178 (D.D.C.2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.... Therefore, because the plaintiff has failed to address the defendants['] positions that certain claims in the complaint should be dismissed, the Court will treat those claims as conceded.") (citations omitted); *Day v. D.C. Dep't of Consumer & Regulatory Affairs,* 191 F.Supp.2d 154, 159 (D.D.C.2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") (citation omitted); *Bancoult v. McNamara,* 227 F.Supp.2d 144, 149 (D.D.C.2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted); *Stephenson v. Cox,* 223 F.Supp.2d 119, 122 (D.D.C.2002) ("The

court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss. Consequently, the court treats the ...[defendants'] arguments for dismissal, which lead to the dismissal of the case, as conceded.") (citations omitted).

Because plaintiff is no longer incarcerated, does not allege that it is likely he will be incarcerated in a federal prison again, and because he has not responded to the defendants' argument that he lacks standing to pursue the injunctive relief sought in his complaint, the Court treats the defendants' argument on this point as conceded and denies plaintiff's request for injunctive relief.

## C. *The FTCA Does Not Waive Sovereign Immunity for Constitutional Torts and Therefore the Court Must Dismiss Counts Five, Six and Seven of the Complaint*

In counts five, six, and seven of his complaint, plaintiff asserts claims pursuant to the FTCA for the deprivation of his constitutional rights: specifically, his "right against wrongful or otherwise false, imprisonment[,]" Compl. ¶ 126, pursuant to the Fourth Amendment (count five), *id.* ¶ 127; his protection against "cruel and unusual punishment" pursuant to the Eighth Amendment (count six), *id.* ¶ 129; and his rights to "substantive and procedural due process, counsel, and trial by jury afforded by the Fifth, Sixth and Eight Amendments[,]" *id.* ¶ 134 (count seven).

---

14. On this point, the Court notes that defendants filed their motion to dismiss on October 7, 2002, and plaintiff did not file an opposition until October 25, 2002, seven days beyond the time in which an opposition was to be timely filed pursuant to the Court's local rules. In a footnote, plaintiff states that the opposition "is being timely filed" because opposing counsel "granted [plaintiff's counsel] the professional courtesy of allowing him until Friday, October 25, 2002, to submit the instant opposition." Pl.'s Opp'n at 1 n. 1. The Court is unaware of any authority that authorizes opposing counsel to grant extensions of the time limits as prescribed by the Court's local rules and no authority to that effect has been offered to the Court by plaintiff's counsel.

Defendants argue that plaintiff has failed to state a claim for which relief can be granted in these counts because "the FTCA does not waive immunity for constitutional torts." Supplement to Defendants' Motion to Dismiss or, in the Alternative, to Transfer ("Defs.' Supp.") at 6. Plaintiff does not address this argument in his supplemental response in opposition to the defendants' motion to dismiss.[15]

■ The Court need not linger on this subject very long. It is well established that "the FTCA does not waive sovereign immunity for constitutional torts that may be committed by [the federal government's] employees." *Meyer,* 929 F.Supp. at 13–14 (citations omitted); *see Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."); *Helton v. United States,* 191 F.Supp.2d 179, 180 (D.D.C.2002) ("the law is clear that the FTCA does not waive the sovereign immunity of the United States from constitutional claims.") (citations omitted); *Tinsley v. Widener,* 150 F.Supp.2d 7, 12 (D.D.C. 2001) ("The FTCA effects a limited waiver of sovereign immunity for certain torts committed by federal employees in the course of their federal employment. . . . The FTCA does not extend this wavier of sovereign immunity to constitutional tort claims, however.") (citing *Federal Deposit Ins. Corp.,* 510 U.S. at 477–78, 114 S.Ct. 996; *Meyer,* 929 F.Supp. at 13–14); *Risley,* 918 F.Supp. at 22 n. 2) ("The . . . FTCA does not waive the federal government's immunity from suit for constitutional torts that may be committed by its employees.") (citing 28 U.S.C. §§ 2679(b)(1) and (b)(2)); (*Kline v. Repub-*

*lic of El Salvador,* 603 F.Supp. 1313, 1317 (D.D.C.1985)). In light of this well-established legal principle, it is clear that counts five, six and seven of plaintiff's complaint must be dismissed for failure to state claims upon which relief can be granted.

### D. *Dismissal of the Claims Against Defendants Ashcroft and Howard*

Plaintiff has named the Attorney General of the United States, John Ashcroft, and the United States Attorney for the District of Columbia, Roscoe C. Howard, as defendants "acting in the capacity of . . . agent[s] of the United States of America." Compl. ¶¶ 4–5. In counts two and three of his complaint, plaintiff asserts claims pursuant to the FTCA and *Bivens* against "each and every defendant" for his wrongful imprisonment and the loss of his property, which he claims resulted from the defendants' negligence.

■ To the extent that plaintiff seeks to assert *Bivens* claims personally against defendants Ashcroft and Howard, he cannot do so in the absence of any allegation that either Ashcroft or Howard was personally involved in the decisions that adversely affected plaintiff's rights. *See Cameron,* 983 F.2d at 257–58 (dismissing plaintiff's *Bivens* action against the Attorney General and the Director of the BOP for failure to state a claim where the plaintiff "provided no factual allegations whatsoever to support his claims against these [defendants]. The complaint itself did not even allege that [these defendants] had participated in any decision or approved any policy that related to the case. . . . [T]he claims against [these defendants] seem to have been based essentially on the bare assumption that policy decisions made in

---

15. In his original complaint, plaintiff brought these claims pursuant to 42 U.S.C. § 1983 (2000). However, in his amended complaint, he seeks to bring these claims solely pursuant to the FTCA.

Washington might have affected Cameron's treatment in Terre Haute. In the absence of any allegations specifying the involvement of [the Attorney General or the Director of the BOP] in this case, the claims against them are based on nothing more than a theory of *respondeat superior,* which of course cannot be used in a *Bivens* action.") (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Notably, in paragraph 54 of his complaint, plaintiff states that "[e]ach of the remaining defendants, excepting the [current] Attorney General of the United States ... and the current United States Attorney for the District of Columbia, was personally involved in the decision to continue plaintiff's incarceration past his judicially imposed sentence, without resort to [a United States Constitution] Article III Court." Compl. ¶ 54. These two defendants, it appears to the Court, have been named as parties solely because of their status as high ranking Department of Justice officials. Because there is no allegation that these defendants were personally involved in any of the actions that impacted the plaintiff's detention or caused the loss of his property, the Court will dismiss the *Bivens* claims made against these defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

■ Furthermore, as to the FTCA claims against these defendants in their official capacities, "[t]he Federal Torts Claim Act directs that the exclusive remedy for common law tort claims is an action against the United States rather than against the individuals or the particular government agencies." *Dorman,* 740 F.Supp. at 879. Section 1346(b) of the FTCA provides that damages may be obtained

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This "section makes it quite clear that liability may be assessed against the United States only if a private person would be liable under comparable circumstances." *Wells v. United States,* 655 F.Supp. 715, 718 (D.D.C.1987), *aff'd* 851 F.2d 1471 (D.C.Cir.1988), *cert. denied* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). Insofar as plaintiff has sought to sue defendants Ashcroft and Howard in their official capacities, those claims must fail as plaintiff has not alleged that these defendants were in any way personally involved in the decision to maintain his incarceration, were responsible for the loss of his property or any personal injury he sustained, or were responsible for the acts of retaliation allegedly perpetrated against him. *See Dorman,* 740 F.Supp. at 879 ("Since the plaintiffs elected to sue the agencies and the officials rather than the government itself, the 'official capacity' aspect of their lawsuit must fail for that reason alone.") (citation omitted). Accordingly, the Court will dismiss the claims against defendants Ashcroft and Howard. *See Cameron,* 983 F.2d at 258 n. 5 (noting that although transfer of action should be done in the interests of justice, it would be in the interests of justice to dismiss the claims against those federal officials who were not personally involved in the decisions affecting plaintiff. "We think it plainly is not in the interests of justice to further prolong the exposure of [the director of the BOP] and Attorney General

Thornburgh to personal liability in this litigation.").

## III. Proper Venue

### A. *Venue is Improper in the District of Columbia*

All of the counts of the plaintiff's complaint are brought pursuant to the Federal Torts Claim Act. "Venue as to plaintiff's Federal Tort Claims Act claim is governed by 28 U.S.C. § 1402(b), the general venue statute governing suits in which the United States is a defendant." *Bartel v. Federal Aviation Admin.*, 617 F.Supp. 190, 198 (D.D.C.1985) (citation omitted). Pursuant to 28 U.S.C. § 1402(b):

> Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Defendants argue that venue is not proper in this Court. Defs.' Mem. at 24. In opposition to the defendants' position, plaintiff argues that venue is proper in this district because

> the instant suit may be maintained wherever the tortious conduct occurred ... [and][h]ere, there is little question but that the decision(s) to repeatedly transfer Mr. Zakiya from one institution to another, in part designed to frustrate his ability to secure his release, was made by the BOP, in Washington, D.C. Tortious conduct occurring in the District of Columbia allows the suit to be maintained here.

Pl.'s Opp'n at 10–11 (citations omitted).

■ "Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to the plaintiff's cause of action took place here." *Franz v. United States*, 591 F.Supp. 374, 378 (D.D.C.1984). None of the events central to plaintiff's

lawsuit occurred in this district. It is clear that any injuries that the plaintiff suffered did not occur in this district as he was never incarcerated here (plaintiff's incarceration being the basis for his "Wrongful Imprisonment" claim in count one and his "Deprivation of Liberty—Wrongful Imprisonment" claim in count five), he did not suffer the loss of his property in this district or as a result of actions taken in this district (the basis for his "Negligence—Loss of Property" claim in count two); he did not suffer his personal injury in this district (the basis for his claim in count three), and he was not retaliated against in this district (the basis of his claim in count four). Despite plaintiff's arguments in his opposition, he has not filed a claim challenging the decision to transfer him to the several facilities where he was detained; what he is actually challenging is the decision to continue his detention beyond the full term of his prison sentence. And it is these actual claims that the Court must consider in deciding whether this matter is properly venued in this district. *See Cameron*, 983 F.2d at 256 ("Courts in this circuit must examine challenges to ... venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring suit here that properly should be pursued elsewhere.").

Furthermore, plaintiff's effort to enjoin the BOP from detaining inmates beyond their judicially imposed sentences because of their failure to either pay or agree to pay their court imposed financial obligations is not a basis for having venue vested in this jurisdiction as the Court has concluded that plaintiff now lacks standing to make this challenge. *See id.* at 257 (holding that, in light of district court's finding that prisoner's claim for injunctive relief was moot, "venue was improper in

the District of Columbia.... It seems abundantly clear that the 'events and omissions' relevant to this case took place predominantly at [the] Terre Haute [federal prison], and that proper venue for this case under § 1391(b) was the Southern District of Indiana where the prison is located."). Moreover, plaintiff's challenge of the BOP policy is a specific attack on the implementation of that policy to his particular situation, and as the actual implementation by the BOP officials occurred at the facilities where he was incarcerated and not in this district, venue is not appropriate here. *Huskey v. Quinlan,* 785 F.Supp. 4, 7 (D.D.C.1992) ("To the extent that [p]laintiff's action can be taken to be concerned with federal prison policies formulated at the BOP's headquarters in Washington, D.C., the Court finds that such a policy is not determinative in determining which is the appropriate venue under Section 1404.... Plaintiff principally takes issue with the conduct of individuals, not with the policies underlying that conduct. More specifically, because the implementation of policy is at issue, and because that implementation took place at the Marion facility in Illinois, venue is more appropriately laid in Illinois.") (citation omitted).

Because none of the operative events that constitute the *gravamen* of plaintiff's claims took place in the District of Columbia, the Court concludes that venue in this district is improper.

**B. Transfer of this Action to the Northern District of West Virginia**

Having determined that this action is not properly venued here, the Court must decide whether to dismiss or transfer the action to the appropriate venue. 28 U.S.C. § 1404(a) provides that "[f]or the conve-nience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the moving party, defendants bear the burden of establishing that the transfer of this action to another federal district is proper. *Shenandoah Associates Ltd. Partnership v. Tirana,* 182 F.Supp.2d 14, 25 (D.D.C.2001). Although the plaintiffs' choice of forum must be given deference, this deference is "greatly diminished when the activities have little, if any, connection with the chosen forum." *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C.1991) (citation omitted).

Having concluded that this Court cannot exercise personal jurisdiction over defendants Thompson, Bledsoe and De-walt, and that venue is improper in this district, the Court must next decide whether to address defendants' challenges to those claims that remain alive or to transfer what remains of this action to another district. Defendants note that if the Court "determines that plaintiff has failed to state a claim upon which relief can be granted" transfer is not warranted. Defs.' Mem. at 24 (citing *Cameron,* 983 F.2d 253, 257–258 n. 5 (D.C.Cir.1993)). However, the Court finds that the interests of justice requires that this matter be transferred to the Northern District of West Virginia for two principal reasons. First, to the extent that plaintiff alleges that defendant Sawyer was personally involved in the decision to maintain his incarceration beyond his judicially imposed date, defendant Sawyer has not been dismissed from this action and plaintiff may attempt to pursue his claims against the current Director of the BOP[16] in that district, where venue would be proper. *See Dorman,* 740 F.Supp. at 879 ("Even if this Court had personal jur-

16. The Court notes that the current director of the BOP is Harley G. Lappin.

isdiction over all of the defendants and subject matter jurisdiction, this Court would transfer this case to the United States District Court for the Eastern District of North Carolina for lack of venue in the District of Columbia. Clearly all of the defendants do not reside in the District of Columbia and accordingly venue would only be proper here if plaintiffs' claim arose in the District of Columbia. 28 U.S.C. § 1391(b)."). Second, this Court has declined to dismiss this action as it pertains to defendants Thompson, Bledsoe and Dewalt, as it is clear that this Court lacks personal jurisdiction over them. In reaching this determination, the Court has not ruled that the allegations made in counts one through four concerning these defendants do not have merit; indeed, the Court could not reach that determination as it does not have personal jurisdiction over the defendants. Therefore, the Court concludes that it is appropriate to transfer this action to the proper forum where plaintiff may assert his claims against the defendants who remain in this case as parties. *See Cameron*, 983 F.2d at 257 (transferring claims against federal officials to a "district where venue is proper" and noting that the court could "transfer the case even though it is likely that [it did] not have personal jurisdiction over [the named defendants].") (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Meyer*, 929 F.Supp. at 14 (case transferred to the Western District of Missouri where "the alleged incident occurred ... [,]" where the defendant resided "as [did] the other prison officials and inmates who may have witnessed the incident" ... [and] "[t]here [was] no factual connection between the plaintiff's claim and Washington D.C."). Because it is clear that this matter could have been brought in the Northern District of West Virginia and because several of the defendants, over whom this Court cannot exercise personal jurisdiction, reside in that district, the interests of justice favor the transfer of this action to that court.

## IV. Conclusion

For the reasons set forth above, the defendants' motion to dismiss is granted in part and the plaintiff's remaining claims are transferred to the Northern District of West Virginia.[17]

## *ORDER*

Pursuant to the Court's ruling in its Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion to dismiss, or in the alternative, transfer [# 8], is granted. It is further

**ORDERED** that this action shall be dismissed as it pertains to defendants John Ashcroft and Roscoe Howard. It is further

**ORDERED** that counts five, six and seven are hereby dismissed for failure to state a claim upon which relief can be granted. It is further

**ORDERED** that this action shall be transferred to the Northern District of West Virginia.

17. An order consistent with the Court's ruling accompanies this Order.