James CAMERON, Appellant,

v.

Richard THORNBURGH, Attorney General, et al.

No. 91–5055.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1992.

Decided Jan. 22, 1993.

Wendy L. Trugman, with whom Brian Hufford was on the brief, for appellant.

Richard N. Reback, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellees.

Before: WALD, SILBERMAN, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

James Cameron appeals from the dismissal, on qualified immunity grounds, of his *Bivens* action against federal prison officials. While he was an inmate at the United States Penitentiary in Terre Haute, Indiana, Cameron filed a complaint in the United States District Court for the District of Columbia claiming that the warden at Terre Haute and other federal officials, including then Attorney General Richard Thornburgh, had violated his Eighth Amendment rights by failing to provide him the low-sodium diet that had been prescribed as treatment for his heart disease. Applying the test outlined in *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982), the district court determined that a right under the Eighth Amendment to a medically prescribed diet was not clearly established and that the defendants therefore had qualified immunity from suit. We do not address the qualified immunity question because we dispose of the case on analytically antecedent grounds. We hold that venue was improper in the District of Columbia and that, as to appellees Thornburgh and Quinlan, Cameron did not state a claim. We affirm the dismissal in part and transfer the remainder of the case to the Southern District of Indiana.

I.

In 1988, James Cameron was an inmate at the United States Penitentiary in Terre Haute, Indiana (Terre Haute). In October of that year, Cameron, who had a history of heart disease, suffered a massive heart attack that required his hospitalization and permanently damaged his heart. On December 23, 1988, shortly after Cameron returned to Terre Haute from the hospital, the prison physician, Dr. Paul Rauwolf, sent a memorandum to a prison official requesting that Cameron be reassigned to the federal penitentiary at Leavenworth "since his severe cardiac disease requires a low-salt diet and this is not available in this institution."[1] Dr. Rauwolf, only five days

---

1. Terre Haute's cafeteria had provided a special low-salt diet until 1983 when the special diet line was discontinued.

later, sent another memorandum, again urging that Cameron be transferred because Terre Haute could not provide him a low-salt diet. Although the warden at Terre Haute did request a transfer, the Regional Director of the Bureau of Prisons denied the request and recommended instead that Cameron be given counseling on self-selecting a low-sodium diet. Cameron subsequently did receive such counseling from a dietician at Terre Haute.

On March 21, 1989, Dr. Rauwolf upped the ante by ordering that Cameron be put on a one gram low-sodium diet. Because that diet was not available at Terre Haute, the Health Service Unit sent a memorandum to Cameron's prison unit manager saying that Cameron would have to be transferred to receive the diet Dr. Rauwolf required.

After Cameron made several administrative requests for a transfer, he filed a *pro se* complaint on May 17, 1989 in the United States District Court for the District of Columbia. Cameron claimed that prison officials were violating his Eighth Amendment rights, as declared in *Estelle v. Gamble*, 429 U.S. 97, 103–06, 97 S.Ct. 285, 290–92, 50 L.Ed.2d 251 (1976), by refusing to provide him with a medically prescribed low-sodium diet. He named as defendants the new warden of Terre Haute, Thomas Kindt; the Director of the North Central Regional Office of the Bureau of Prisons, Larry Dubois; the Director of the Federal Bureau of Prisons, J. Michael Quinlan; and the Attorney General of the United States, Richard Thornburgh. Construed liberally, Cameron's complaint included an action against the defendants in their official capacities for injunctive relief, a *Bivens* action against the defendants in their individual capacities for damages, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and an action for damages against the appellees in their official capacities.

On June 10, 1989, officials at Terre Haute transferred appellant to the United States Medical Center for Federal Prisoners in Springfield, Missouri. There he received a complete examination by several physicians, including a cardiologist. The physicians at Springfield determined that Cameron should be returned to Terre Haute, although there is some dispute concerning whether they actually determined that he would be able to self-select an appropriate diet there.

In August 1989 appellees moved to dismiss Cameron's complaint on the grounds that venue was improper in the District of Columbia, that the court lacked personal jurisdiction over all appellees except Attorney General Thornburgh, that appellant had failed to state a claim, and that appellees were entitled to qualified immunity. These motions were pending for over a year. In December 1990, without conceding that Cameron was unable to self-select an appropriate diet at Terre Haute, prison officials decided to transfer Cameron to the penitentiary at Leavenworth where a special three gram low-sodium diet could be provided. Appellant thereupon moved to stay the trial date and to stay any decision on the motion to dismiss to allow him to move for leave to amend his complaint to add new defendants.

The district court denied appellant's motions to stay and dismissed the complaint on January 9, 1991. The court dismissed as moot Cameron's claim for injunctive relief because the Bureau of Prisons had already determined to transfer Cameron to Leavenworth. *Cameron v. Thornburgh*, No. 89–1404, Mem.Op. at 3 (D.D.C. Jan. 9, 1991). To the extent that the *pro se* complaint stated claims for money damages against appellees in their official capacities, the court dismissed the claims for lack of jurisdiction because Cameron had not exhausted his remedies under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), §§ 2671–2680 (1988). Deciding that Cameron had had ample time to amend his complaint in the 10 months since he had obtained counsel, the court denied Cameron's motion to stay to allow him to amend his complaint. Finally, the court concluded that appellees were entitled to qualified immunity and dismissed Cameron's claim against them in their individual capacities. Applying the analysis outlined in *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982), the district judge determined that the right to a medically prescribed diet was not clearly established and thus that appellees were protected by qualified immunity.

Cameron asserts that the district court erred in determining that the appellees were protected by qualified immunity. The right of a prisoner under the Eighth Amendment to be provided a medically prescribed diet, he contends, was clearly established in 1989. Cameron also claims that the district court abused its discretion by denying his motion to stay to allow him to amend his complaint and add new defendants. Appellees, of course, defend the district court's conclusion, but they also renew their claims of improper venue and lack of personal jurisdiction and argue that the district court's decision to dismiss could and should be affirmed on those alternate grounds.

## II.

■ Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere. As our recitation of the facts above should make clear, this was an unusual case to bring in the District of Columbia. As far as it appears from the appellant's original complaint and his brief on appeal, all acts and omissions related to his complaint occurred in Indiana or at the prison medical center in Springfield, Missouri. Similarly, the two appellees most directly connected to Cameron's case, Kindt and Dubois, were in Indiana and Kansas, respectively. Only the inclusion of appellees Quinlan and Thornburgh gives this case any connection to the District of Columbia at all.

■ Although the district court did address appellees' challenges to venue and personal jurisdiction before proceeding to the question of qualified immunity, we think the court erred in finding venue proper in the District of Columbia. Focusing on appellant's claim for an injunction, the court concluded that venue was proper under 28 U.S.C. § 1391(e) and that the court had personal jurisdiction under the nationwide service of process provision of the same section and "case law interpreting the statute to provide for personal jurisdiction over suits for injunctive relief against defendants in their official capacities." Mem. Op. at 3. *See Briggs v. Goodwin,* 569 F.2d 1, 7–10 (D.C.Cir.1977), *rev'd on other grounds sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *see also Driver v. Helms,* 577 F.2d 147, 155 (1st Cir.1978), *rev'd on other grounds sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).[2] Under the Supreme Court's holding in *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), however, § 1391(e) applies only to suits against government officers in their official capacities, not to *Bivens* actions. *See id.* at 542–43, 100 S.Ct. at 783–84. The *Stafford* Court determined that in enacting the section, Congress intended primarily to allow plaintiffs to bring actions against government officers for injunctions in districts other than the District for the District of Columbia. The statute made it easier for plaintiffs to sue the federal government locally without having to go to Washington; it was not intended to make a government officer subject to suit in his individual capacity "in any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction." *Id.* at 544, 100 S.Ct. at 784. Although the district court did not explicitly acknowledge it, by analyzing venue and personal jurisdiction only for the action for an injunction, the court was essentially assuming that it could rely on the concepts of pendent ven-

---

2. Section 1391(e) makes venue proper for a suit against government officials in any district in which one defendant resides. Because Attorney General Thornburgh lived in the District of Co-

lumbia, the court correctly concluded that venue would have been proper in this district *for the injunctive claim.*

ue, *see Beattie v. United States*, 756 F.2d 91, 101–02 (D.C.Cir.1984); *Laffey v. Northwest Airlines, Inc.*, 321 F.Supp. 1041, 1042 (D.D.C.1971), and pendent personal jurisdiction, *see Oetiker v. Jurid Werke G.m.b.H.*, 556 F.2d 1, 4–5 (D.C.Cir.1977); *see also Robinson v. Penn Cent. Co.*, 484 F.2d 553, 554–56 (3d Cir.1973), to hear the action for damages against appellees in their individual capacities.

■ But as the district court found, Cameron's impending transfer to Leavenworth made the claim for an injunction moot. And without the claim for injunctive relief, venue was improper in the District of Columbia.[3] Pendent venue could hardly be used to allow the *Bivens* action to hang from a cause of action that had become moot, and appellant could not fit his claim under the general venue provisions for federal question cases set out in 28 U.S.C. § 1391(b). Appellant's contention that his suit meets § 1391(b)'s requirement that the complaint be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred," *id.* § 1391(b)(2), depends on a wholly unsubstantiated assumption that policy decisions made in Washington ultimately affected Cameron's treatment at Terre Haute. Appellant's complaint did not allege a single rule or policy emanating from Washington that had affected his case. It seems abundantly clear that the "events and omissions" relevant to this case took place predominantly at Terre Haute, and that the proper venue for this case under § 1391(b)

was the Southern District of Indiana where the prison is located. The reasoning we have outlined essentially tracks the decision of the court in *Pollack v. Meese*, 737 F.Supp. 663 (D.D.C.1990). There the district court faced a quite similar sequence of events that mooted another federal prisoner's claim for injunctive relief. The *Pollack* court simply applied the general venue provision, § 1391(b), to the plaintiff's *Bivens* action considered alone, determined that venue was improper, and, after noting that § 1391(e) did not apply to a *Bivens* action, transferred the case under 28 U.S.C. § 1406. A similar transfer was appropriate in this case—at least with respect to two of the appellees.

■ We think it is in the interest of justice to transfer the claims against appellees Kindt and DuBois to a district where venue is proper. *See* 28 U.S.C. § 1406 (1988). We need not remand to the district court for it to enter the order to transfer, *see Cox Enters., Inc. v. Holt*, 691 F.2d 989, 990 (11th Cir.1982); *Dr. John T. MacDonald Found., Inc. v. Califano*, 571 F.2d 328, 332 (5th Cir.) (en banc), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978), and we may transfer the case even though it is likely that we do not have personal jurisdiction over appellees Kindt and DuBois, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962).

■ We dismiss appellant's complaint against appellees Thornburgh and Quinlan,[4] however, for failure to state a claim.[5]

---

**3.** We focus primarily on the venue question because it provides an easier resolution of the case. Although the Supreme Court did note in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), that questions of personal jurisdiction should generally be decided before questions of venue, *see id.* at 180, 99 S.Ct. at 2714, the Court went on to say that in some circumstances, if a "sound prudential justification" appeared for doing so, a court could reject a case for improper venue without deciding the question of personal jurisdiction, *see id.*

**4.** Although the district court in *Pollack v. Meese*, 737 F.Supp. 663 (D.D.C.1990), determined that under the laws of the District of Columbia it did not have personal jurisdiction over Michael

Quinlan, *see id.* at 665, we conclude that D.C. CODE ANNOTATED § 13–422, which provides for general personal jurisdiction over any person who "maintain[s] his or its principal place of business" in the District, D.C. CODE ANN. § 13–422 (Michie 1989), does give this court personal jurisdiction over Quinlan, whose office was located in the District.

**5.** The Second Circuit has suggested in dicta that a court should not consider a motion to dismiss for failure to state a claim if venue is improper for the cause of action. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc) (Friendly, J.); *cf. Madara v. Hall*, 916 F.2d 1510, 1513–14 (11th Cir.1990). In the context of this *Bivens* action, however, we think it more in keeping with the policy de-

The district court did not even need to apply the heightened pleading standard we require in *Bivens* actions, *see, e.g., Hunter v. District of Columbia,* 943 F.2d 69 (D.C.Cir.1991), to see that Cameron provided no factual allegations whatsoever to support his claim against these appellees. The complaint itself did not even allege that Thornburgh and Quinlan had participated in any decision or approved any policy that related to the case. As we have noted, the claims against Thornburgh and Quinlan seem to have been based essentially on the bare assumption that policy decisions made in Washington might have affected Cameron's treatment in Terre Haute. In the absence of any allegations specifying the involvement of Thornburgh or Quinlan in this case, the claims against them are based on nothing more than a theory of *respondeat superior,* which of course cannot be used in a *Bivens* action. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Because we conclude that appellant has not even stated a claim against appellees Thornburgh and Quinlan, we affirm the district court's dismissal of the *Bivens* action against these appellees on that ground, and we do not reach the question whether the constitutional right asserted by Cameron was clearly established.

■ We turn then to the district court's refusal to stay decision on the motions to dismiss. Because we transfer the case against two appellees, the denial of stay is now relevant only to the extent that an opportunity to amend the complaint might have enabled Cameron to avoid dismissal of his claim against appellees Thornburgh and Quinlan. The trial court did not abuse its

discretion in denying the motion for a stay. We think the court reasonably concluded that appellant had delayed too long before requesting the stay to amend, *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (stating that "undue delay" can justify denying a motion to amend a complaint), particularly in light of the purposes of qualified immunity "expeditiously to weed out" insubstantial *Bivens* claims, *Siegert v. Gilley,* — U.S. —, —, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), and to protect public officials from the burdens of litigation, *Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Appellant did not file the motion to stay until 15 months after the motions to dismiss had been filed and 10 months after he had obtained representation by counsel.

\* \* \* \* \* \*

For the reasons stated above, we vacate the judgment of the district court dismissing appellant's claim for damages against appellees Kindt and DuBois and transfer the case to the Southern District of Indiana.

*It is so ordered.*

---

clared by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 814–16, 102 S.Ct. 2727, 2735–37, 73 L.Ed.2d 396 (1982) (that insubstantial claims should not proceed to trial) to dismiss the action against Thornburgh and Quinlan. Although we normally would be inclined to transfer the entire case, we see no need to follow that path when briefing and argument in this court have convinced us that appellant has stated no claim against Thornburgh and Quinlan. We would frustrate the Supreme Court's intentions in developing the whole doctrine of

qualified immunity (which is intended to enable lower courts "expeditiously to weed out" insubstantial *Bivens* actions, *Siegert v. Gilley,* — U.S. —, —, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)) were we to transfer these frivolous claims. Moreover, § 1406 directs us to transfer a case to another district only if we determine it will be in the interests of justice to do so. We think it plainly is not in the interests of justice to further prolong the exposure of Quinlan and Attorney General Thornburgh to personal liability in this litigation.